Johh T. Casey, J.
The plaintiff, Verbanic, a member of the Board of Education of the Lackawanna City School District, *459 brings this action on behalf of himself and other duly elected board members to restrain the defendant overseer, appointed by the defendant Commissioner, from interfering with the performance of the powers and duties of the board.
Following certain complaints made to the Commissioner urging the removal of certain board members (the named plaintiff was not among them) for misfeasance in office, hearings were held by the Commissioner wherein it appeared that certain board members were then under indictment for dereliction of duties; that others when subpoenaed before the Grand Jury refused to execute waivers of immunity or to testify; and that a survey of the affairs of the district conducted by the Commissioner disclosed irregularities in personnel and management practices by the board. Regardless, the Commissioner declined to remove any board member under section 306 of the Education Law. Instead, on January 26, 1971, he appointed an overseer “ to advise the Board and the members of the administrative staff on such matters as he may deem appropriate ”.
On April 10,1972, the Commissioner, apparently still unsatisfied with affairs of the district, modified the powers and responsibilities of the overseer as follows:. “ I am hereby modifying the powers and responsibilities of the Overseer * * * to nrovide that no official action of any kind may be taken by this Board of Education or any member thereof without the prior written approval of the Overseer. Specifically, the Board and each of its members were instructed among the specifics that (1) no meeting [of any kind] shall be scheduled or conducted without the prior written approval of the Overseer; (2) the agenda for each such meeting shall be prepared at the direction of the Overseer and no business not included on such agenda shall be transacted except with the prior written approval of the Overseer ”.
The justification for such drastic action is sought from subdivisions 1 and 2 of section 305 of the Education Law; the latter subdivisión providing that [the Commissioner] “ shall have general supervision over all schools and institutions * * * and shall cause the same to be examined and inspected, and shall advise and guide the school officers of all districts * * * in relation to their duties and the general management of the schools under their control ” (emphasis added), as well as from section 310 of the Education Law which forbids judicial review of a determination by the Commissioner unless found to be purely arbitrary. It is also urged by the Commissioner that because section 306 gives him the power of removal of the board *460 for willful violation of duty, he impliedly possesses the lesser power of appointing an overseer in aid of the enforcement of his judicial decisions.
Conceding the above-cited statutory grant of power to the Commissioner, it has nowhere been demonstrated that any statutory provision gives to him, even in the most extreme situations, the power» to appoint an overseer of a Board of Education duly elected by the people of a school district. If found to exist at all, the power to appoint an overseer must be found as necessarily implied in the discharge of his duties regarding educational policy. The fiscal problems and affairs of school districts are not, however, matters of' educational policy nor are their solutions peculiarly within the expertise conceded the Commissioner. Contrariwise, the control of such affairs, in the ordinary situations at least, is specifically given to the city Boards of Education rather than to the Commissioner. (Education Law', § 250 et seq.) The Commissioner would be perfectly content to permit the school board exclusively and without interference to conduct and regulate its own business, fiscal and personnel affairs, if it were doing so in what1 in his judgment was a satisfactory manner. The intervention which occurred, occurred only because in the judgment of the Commissioner the school boarcj. was not performing in such a manner and he had received complaints about that performance. In face of those complaints and after the hearings he refused to exercise his power of removal (Education Law, § 306), but adopted on January 26, 1971, what he considered a less drastic remedy — the appointment of an. overseer whom he first vested with the power to advise the school district. (Education Law, § 305, subd. 2.) In doing this he was within his power and authority under subdivision 2 of section 305 of the Education Law, Lor he was simply lending a helping hand to the members of the board in what he deemed was an extreme situation by putting on the scene a representative of his who could keep the Commissioner in close contact with the problems at hand and the actions of the board as an incident of his power to advise and guide or to remove.
When on April 10, 1972, however, the Commissioner amended his prior order and gave the overseer the absolute power over the scheduling grid the agenda of every meeting and forbade action upon any transaction without the overseer’s prior written approval, he completely and totally invaded and ursurped that area which by statute belonged exclusively to the board and far exceeded his own statutory power which was limited by subdivision 2 of section 305 of the Education Law to advising and *461 guiding the hoard and to any power necessarily implied therein. The Commissioner could not refuse to remove or suspend the board members and completely control the board through an overseer. By so doing he made the overseer the board itself and the board a figurehead. By so doing he did not act less drastically than if he had removed the members of the board complained against. Had he exercised his power of removal or its admittedly less drastic power of suspension (Matter of Ocean Hill-Brownsville Governing Bd. v. Board of Educ. of City of N. Y., 30 A D 2d 447, affd. 23 N Y 2d 483) the member removed or suspended could resort to appropriate remedies to test the propriety of such action and the vacancy created would be filled at a new election. By refusing to remove or suspend but rather by completely curtailing the powers and duties of the entire board he not only denied the members accuséd any forum in which to seek redress, but stigmatized the entire board with the mark of the accused members, affecting also the new members such as the named plaintiff who were replacing older ones with each new school election. In this sense the Commissioner’s order of April 10,1972 can hardly be considered a lesser penalty or punishment than removal or suspension but rather a complete and unauthorized takeover of all the powers and duties that belong to a duly elected board. The order of April 10,1972, therefore, was purely arbitrary.
The defendant urges that inasmuch as the order was made April 10,1972 the relief sought must be considered in the nature of an article 78 proceeding and is, therefore, barred by the Statute of Limitations. More than four months have elapsed as far as the order itself is concerned. It is, however, the actions of the overseer under the order that are here sought to be restrained and since these actions are still continuing and are in excess of the Commissioner’s authority the relief demanded is properly injunctive. (Gaynor v. Rockefeller, 21 A D 2d 92, affd. 15 N Y 2d 120; Halpern v. Lomenzo, 35 A D 2d 41; Board of Educ. of Town of Otego v. Rickard, 32 A D 2d 135.) The defense of the Statute of Limitations, is, therefore, insufficient as a matter of law.
Accordingly, the overseer is ordered restrained from taking any action under and pursuant to the Commissioner’s decision of April 10, 1972' and to this extent only the plaintiffs’ demand for a permanent injunction is granted for the reason that the order on which it is based is purely arbitrary.